UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIA SOCORRO GONZALEZ,            )      NO. CV 08-6957-CT
                                   )
          Plaintiff,               )      OPINION AND ORDER
                                   )
     v.                            )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                                   )
          Defendant.               )
_____)

     For the reasons set forth below, it is ordered that the matter be
**REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to
defendant Commissioner of Social Security ("the Commissioner") for
further administrative action consistent with this opinion and order.

                         SUMMARY OF PROCEEDINGS

     On October 22, 2008, Maria Socorro Gonzalez ("plaintiff"), filed a
complaint seeking judicial review of the denial of benefits by the
Commissioner pursuant to the Social Security Act ("the Act").   The
parties filed a consent to proceed before the magistrate judge.   On
February 5, 2009, plaintiff filed a brief with points and authorities in
support of remand or reversal.  On March 3, 2009, the Commissioner filed

1 | defendant's brief.

2 | <div align="center">SUMMARY OF ADMINISTRATIVE RECORD</div>

3 | 1.   Proceedings

4 | On  February  5,  2007,  plaintiff  filed  an  application  for

5 | Supplemental  Security  Income  ("SSI")  alleging  disability  beginning

6 | January 24, 2007, due to back, right hand, knee, and vision conditions.

7 | (TR  85,  100.)[1]   The  application  was  denied  initially  and  upon

8 | reconsideration.   (TR 43, 49.)

9 | On October 16, 2007, plaintiff filed a request for a hearing before

10 | an  administrative  law  judge  ("ALJ").   (TR 57.)   On  April  21,  2008,

11 | plaintiff, represented by an attorney, appeared and testified before an

12 | ALJ.  (TR 20-30.)  The ALJ also considered the testimony of a vocational

13 | expert ("VE").  (TR 32-36.)

14 | On June 21, 2008, the ALJ issued a decision that plaintiff was not

15 | disabled as defined by the Act and thus was not eligible for benefits.

16 | (TR 21-28.)

17 | On  August  18,  2008,  plaintiff  filed  a  request  with  the  Social

18 | Security  Appeals  Council  to  review  the  ALJ's  decision.   (TR 5.)   On

19 | August 29, 2008, the request was denied.  (TR 1.)  Accordingly, the

20 | ALJ's decision stands as the final decision of the Commissioner.

21 | Plaintiff subsequently sought judicial review in this court.

22 | 2.   Summary Of The Evidence

23 | The ALJ's decision is attached as an exhibit to this opinion and

24 | order and, except as otherwise noted, materially summarizes the evidence

25 |

26 | [1]"TR" refers to the transcript of the record of

27 | administrative proceedings in this case and will be followed by
the relevant page number(s) of the transcript.

28 | <div align="center">2</div>

1 | in the case.

2 | <center>PLAINTIFF'S CONTENTIONS</center>

3 | Plaintiff essentially contends the ALJ materially erred when he:

4 | 1. Omitted exertional and non-exertional limitations that he found

5 | from the residual functional capacity ("RFC") assessment and VE

6 | hypotheticals; and,

7 | 2. Failed to fully credit plaintiff's subjective pain complaints.

8 | <center>STANDARD OF REVIEW</center>

9 | Under 42 U.S.C. §405(g), this court reviews the Commissioner's

10 | decision to determine if: (1) the Commissioner's findings are supported

11 | by substantial evidence; and, (2) the Commissioner used proper legal

12 | standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

13 | Substantial evidence means "more than a mere scintilla," Richardson v.

14 | Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

15 | Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

16 | When the evidence can reasonably support either affirming or

17 | reversing the Commissioner's conclusion, however, the Court may not

18 | substitute its judgment for that of the Commissioner. Flaten v. Sec'y

19 | of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

20 | The court has the authority to affirm, modify, or reverse the

21 | Commissioner's decision "with or without remanding the cause for

22 | rehearing." 42 U.S.C. §405(g).

23 | Remand is appropriate where additional proceedings would remedy

24 | defects in the Commissioner's decision. McAllister v. Sullivan, 888

25 | F.2d 599, 603 (9th Cir. 1989).

26 | //

27 | //

28 |

<center>3</center>

<div align="center">DISCUSSION</div>

1.   <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment, "it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the

<div align="center">4</div>

1  person is unable to perform other work.   20 C.F.R. §416.920; <u>Bowen v.</u>

2  <u>Yuckert</u>, 482 U.S. 137, 140-42 (1987).

3      2.   <u>Issues</u>

4          A.   <u>RFC/VE Hypothetical</u> (Issue #1)

5      Plaintiff contends the ALJ found sitting, standing, and mental

6  limitations that he omitted from the RFC assessment and VE hypotheticals

7  and that, therefore, the VE testimony is not substantial evidence for a

8  non-disability finding.[2]  The court finds the ALJ's written decision is

9  internally inconsistent in this respect and remand is thus appropriate.

10     The RFC is the most an individual can still do after considering

11 the effects of any physical or mental limitations that affect the

12 ability to perform work-related tasks.   20 C.F.R. §416.945.

13     A hypothetical question posed to the VE must set out all of

14 plaintiff's limitations.   <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir.

15 1988).   It may exclude those alleged limitations the ALJ finds do not

16 _____

17     [2] To the extent plaintiff suggests the hypotheticals were
   deficient for the additional reason that the ALJ defined the
18 RFC's terms "mild" and "moderate" (TR 32), the court is
   unpersuaded. There is no suggestion the VE was misled or confused
19 by the definitions or that the VE's conclusions were impacted.
       The court is also unpersuaded to the extent plaintiff
20 contends the ALJ improperly evaluated treating physician Daniel
   Capen, M.D.'s conclusion that plaintiff was "totally temporarily
21 disabled" under the worker's compensation scheme.  First,
   worker's compensation applies different standards, and so a
22 finding of disability under that paradigm does not bind the
   Commissioner.  20 C.F.R. §416.904. In any event, though an ALJ
23 must evaluate and provide "specific and legitimate reasons" for
   rejecting the findings of a treating physician, an ALJ is "not
24 bound by an expert medical opinion on the ultimate question of
   disability." <u>Tomasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir.
25 2008); <u>see also</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d
   1190, 1195 (9th Cir. 2004)("[A]n ALJ may discredit treating
26 physicians' opinions that are conclusory, brief, and unsupported
   by the record as a whole," or "by objective medical findings.").
27

28                                  5

1  exist based on substantial evidence.  <u>Rollins v. Massanari</u>, 261 F.3d

2  853, 857 (9th Cir. 2001).

3       Here, the ALJ excluded from the RFC limitations that, in the body

4  of the opinion, he found.  In his "findings of fact and conclusions of

5  law," the ALJ found plaintiff has the "severe" impairments of

6  "anxiety/depression with agoraphobia and degenerative disc disease

7  status post lumbar fusion" (TR 11), and that she is unable to perform

8  her past relevant work as a server.  (TR 13.)  The ALJ also found

9  plaintiff retains the RFC to perform only limited "sedentary" work,[3]

10 i.e., in addition to the statutory "sedentary" limitations she must also

11 be able to change positions at will, can only occasionally stoop, kneel,

12 crouch, or crawl, and has "mild to moderate limitations in abilities to

13 maintain concentration and attention; and has mild limitations in

14 understanding and memory."  (TR 11.)

15      Within the body of the decision, however, the ALJ appears to

16 conclude plaintiff is even further restricted.  With respect to

17 exertional limitations, the ALJ "accepts" the opinion of examining

18 physician Lawrence Gerson, M.D. that plaintiff "can stand for no more

19 than one or two hours per day and can sit for no more than four to six

20 hours per day."  (TR 11-12.)  When the ALJ proposed a hypothetical to

21 the VE that added the lower range of these limits to plaintiff's RFC,

22

23      _____

          [3] Sedentary work involves: "lifting no more than 10 pounds
24 at a time and occasionally lifting or carrying articles like
   docket files, ledgers, and small tools.  Although a sedentary job
25 is defined as one which involves sitting, a certain amount of
   walking and standing is often necessary in carrying out job
26 duties.  Jobs are sedentary if walking and standing are required
   occasionally and other sedentary criteria are met."  20 C.F.R.
27 §416.967 (2004).

28                                    6

1  the VE concluded such a person could not perform full-time work.   (TR

2  35.)   With respect to non-exertional limitations, in the body of the

3  decision the ALJ additionally "finds" plaintiff moderately limited in

4  her abilities to respond appropriately to changes in work setting and to

5  carry out detailed instructions.   (TR 13.)   There was no hypothetical

6  proposed to the VE about a person with these limitations.   When,

7  however, the ALJ proposed a hypothetical person with other narrower non-

8  exertional limits than included in the RFC, the VE concluded the person

9  could not work.[4]   (TR 35.)

10      The error cannot be deemed harmless on the basis that the omitted

11  limitations may be encompassed by the existing RFC, as the Commissioner

12  urges.   The VE testimony suggests otherwise; it indicates that the

13  addition of even one of these limitations could be "determinative as to

14  the vocational expert's recommendation to the ALJ."   Robbins v. Social

15  Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006).

16      Accordingly, this error is material and remand is necessary for the

17  ALJ to clarify the ambiguity within his opinion as to plaintiff's RFC

18  and, if warranted, to conduct further administrative proceedings.

19      B.   Subjective Complaints (Issue #2)

20      Plaintiff also alleges the ALJ failed to properly consider her

21  subjective pain complaints.

22      Absent evidence of malingering, a Commissioner cannot discount a

23  plaintiff's statements regarding her pain symptoms merely because the

24  objective medical evidence does not corroborate those complaints.

25

26      [4] The ALJ proposed a person whose attention and
    concentration were impacted up to one-third of a work day.   (TR
27  35.)

28                                    7

1  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).   If the
2  Commissioner does not credit plaintiff's subjective statements, the
3  Commissioner "must specifically make findings which support this
4  conclusion," Id., and the reasons given must be clear and convincing,
5  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

6      Because the court finds remand is necessary to enable the ALJ to
7  clarify his findings with respect to plaintiff's RFC, plaintiff's
8  credibility can be re-evaluated, if necessary, at that time.

9                    REMAND IS APPROPRIATE IN THIS CASE
10     The decision whether to remand a case for additional evidence is
11 within the discretion of the court.   Sprague v. Bowen, 812 F.2d 1226,
12 1232 (9th Cir. 1987).   Remand is appropriate if the record is incomplete
13 and additional proceedings would remedy defects in the Commissioner's
14 decision.   McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

15     Having considered the record as a whole, it appears that the
16 present record is insufficiently developed.

17                              CONCLUSION
18     Accordingly, it is ordered that the matter be **REMANDED** pursuant to
19 sentence four of 42 U.S.C. §405(g) to the Commissioner for further
20 administrative action consistent with this opinion.

21 DATED: March 5, 2009

22

                    CAROLYN TURCHIN
23                  UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28
                                  8

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Maria Socorro Gonzalez | Supplemental Security Income |
| (Claimant) | |
| Maria Socorro Gonzalez | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On January 24, 2007, the claimant filed an application for supplemental security income, alleging disability beginning January 24, 2007. The claim was denied initially on May 24, 2007, and upon reconsideration on September 21, 2007. Thereafter, the claimant filed a timely written request for hearing on October 16, 2007 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on April 21, 2008, in Long Beach, CA. E. T. Kurata, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Marc Kalagian, an attorney.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since January 24, 2007, the date the application was filed.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

See Next Page

9

**EXHIBIT**

Maria Socorro Gonzalez <span style="background:black">     </span>                                                    Page 2 of 7

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

See Next Page



10

Maria Socorro Gonzalez ████████                                     Page 3 of 7

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity since January 24, 2007, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).**

**2.   The claimant has the following severe impairments: anxiety/depression with agoraphobia and degenerative disc disease status post lumbar fusion (20 CFR 416.920(c)).**

**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she must be permitted to change positions at will; can no more than occasionally stoop, kneel, crouch, or crawl; has mild to moderate limitations in abilities to maintain concentration and attention; and has moderate limitations in understanding and memory.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

See Next Page



11

Maria Socorro Gonzalez (███████)                                    Page 4 of 7

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant states that she is primarily incapacitated by back pain. In 2003 she had a fusion surgery at L5-S1 and states that she has ongoing pain and radiculopathy. In December, 2006, she stated that she had recently developed occasional bowel incontinence (Exhibit 17-F). January 30, 2007 MRI shows four millimeter disc protrusion at L2-L3 (Exhibit 9-F: 2). She treats with prescription pain medications and, in 2007, a nerve block (Exhibit 18-F). On May 30, 2007 , she was seen by a pain management specialist (Exhibit 9-F).

Additionally, the claimant complains of knee and hip pain (Exhibit 11-F). June 29, 2007 X-rays show degenerative changes in pubic symphysis and normal left knee (Exhibit 11-F: 8). No further treatment was performed.

Furthermore, in a disability examination, the claimant stated that she had a right radial tunnel release surgery in 2006 and has since developed weakness and difficulty writing. Her wrist examination was normal and she has no history of treatment for upper extremity problem since the date she had the surgery.

On April 13, 2007, the claimant was examined by internist, Lawrence E. Gerson, M.D., at the request of the Disability Determination Service (DDS) (Exhibit 4-F). The claimant's physical examination was entirely normal, including clear lungs; normal heart sounds; normal gait; able to heel and toe walk; normal range of motion of upper and lower extremity joints and back; normal motor strength and muscle bulk and tone; normal sensation and reflexes; and no muscle spasms, tender points, scoliosis or kyphosis. Based upon the results of the examination and the claimant's history, Dr. Gerson opined that the claimant has no lifting limitations, but can stand for no more than one or two hours per day and can sit for no more than four to six hours per day (Exhibit 4-F).

The claimant's primary treating physician, Daniel A. Capen, M.D., states that the claimant is unable to tolerate prolonged sitting and pain without being able to get up and move around at her own discretion (Exhibit 19-F: 1). At another point he states that she can perform light work with no prolonged standing and walking on a permanent basis (Exhibit 19-F: 8). He notes that she has normal reflexes, decreased sensation at the L5-S1 dermatone, positive right-sided straight leg raise testing, tender paralumbar muscles, normal gait, weak right heel and toe walking, decreased



Maria Socorro Gonzalez ▮▮▮▮▮                                    Page 5 of 7

and painful range of motion of the spine. Other notes indicate temporary disability (Exhibit 10-F).

The undersigned accepts the functional limitations proposed by both the claimant's examining and treating doctors. Thus, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except that she must be permitted to change positions at will; can no more than occasionally stoop, kneel, crouch, or crawl.

In addition to these physical limitations, the claimant states that her depression and anxiety limit her capacity to work. She was treated at Rio Hondo Mental Health Center from July 17, 2001 to may 28, 2003 and from August 29, 2007 through the present (Exhibit 12-F). At her assessment on March 1, 2007, she was diagnosed with major depressive disorder and panic disorder without agoraphobia. Mental status examination showed that she was oriented; average grooming and hygiene; little eye contact; cooperate interaction; soft speech; impaired memory; constricted affect; no perceptual disturbance; ruminations and excessive worry present; inappropriate guilt; minimally impaired judgment; tearfulness, irritability, anhedonia, hopelessness, and worthlessness; isolated and withdrawn; minimally impaired insight; and below average fund of knowledge. She was noted to have Global Assessment of Functioning score of 45, which indicates serious symptoms or any serious impairment in social, occupational or school functioning (DSM IV, Exhibit 12-F). However, her condition improved with treatment.

On March 19, 2007, the claimant was examined by psychiatrist, Lawrence Albers, M.D., at the request of the Disability Determination Service (DDS) (Exhibit 3-F). The claimant explained that she started taking psychiatric medications two weeks before the examination. She has never been psychiatrically hospitalized, and has no suicidal or homicidal ideations, nor any hallucinations. The claimant was alert and oriented; had normal speech rate and tone; had a normal fund of knowledge; had a normal memory; her mood was depressed; and had normal concentration, calculation, abstraction, insight, and judgment. Dr. Albers diagnosed depression and recommended that the claimant has an unspecified "decline in social functioning" (Exhibit 3-F).

Consistent with the opinion of the DDS evaluator and the claimant's treatment records, the undersigned finds that the claimant has mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of extended-duration decompensation (Exhibit 6-F: 9). She is moderately limited in ability to respond appropriately to changes in work setting; ability to understand, remember, and carry out detailed instructions; and ability to maintain attention and concentration for extended periods of time (Exhibit 7-F).

In making these determinations, the undersigned has also considered the claimant's subjective complaints. However, the undersigned does not find the claimant sufficiently credible to justify any further limitations than those established by the objective medical record. The undersigned finds that the claimant's allegations of total disability are inconsistent with her activities. The claimant admits that she is able to care for her own bathing, grooming, cooking, household chores, errands, and money management needs. This broad range of capacities is not consistent with a finding of total disability.



13

Maria Socorro Gonzalez ███████████                                   Page 6 of 7

**5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).**

The claimant has past relevant work as a waitress (DOT # 311.477-010, light exertion, semi-skilled). However, as the claimant is currently limited to sedentary exertion work activities, she is unable to perform her past relevant work.

**6.   The claimant was born on December 23, 1960 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).**

**7.   The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).**

**8.   Transferability of job skills is not an issue in this case because the claimant's skills are not transferable, per vocational expert testimony (20 CFR 416.968).**

**9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).   If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.18.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as assembler (DOT # 713.687-026, sedentary exertion, unskilled), of which there are 800 jobs in the region and 20,000 jobs in the nation, dipper (DOT # 715.687-026, of which there are 400 jobs in the region and 6,000 jobs in the nation, and cutter (DOT # 249.687-014, sedentary exertion, unskilled), of which there are 3,000 jobs in the region and 60,000 jobs in the nation.



See Next Page

14

Maria Socorro Gonzalez ███████                                   Page 7 of 7

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.   A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since January 24, 2007, the date the application was filed (20 CFR 416.920(g)).**

### DECISION

Based on the application for supplemental security income filed on January 24, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

John C. Tobin
Administrative Law Judge

JUN 2 1 2008
Date

EXHIBIT

15